**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| **v.** | : | **Case No. SAG-22-225** |
| | : | |
| **SUPREME JONES,** | : | |
| | : | |
| **Defendant.** | : | |

---

## DEFENSE OMNIBUS PRETRIAL MOTIONS IN LIMINE

Mr. Jones, through counsel, moves this Honorable Court to exclude from trial certain evidence noticed in the Government's 404(b) motion, and additional categories of evidence, including spousal statements to law enforcement, Mr. Jones's employment disciplinary record, segments of his statements to law enforcement, and the testimony of several prosecution witnesses, as set forth below.

### I.      RELEVANT BACKGROUND

On June 23, 2022, Mr. Jones was charged with two counts of violating airport security requirements, in violation of 49 U.S.C. § 46314(a) and (b)(2). Specifically, Mr. Jones is accused of "knowingly and willfully entering, in violation of Title 49 U.S.C. Sections 44901, 44903(b), 44903(c) and 44906, an aircraft or airport area that serves as an air carrier or foreign air carrier with intent to evade security procedures." 49 U.S.C. § 46314(a) and (b)(2). The charges relate to Mr. Jones's prior employment as a Customs and Border Protection ("CBP") Officer at the Baltimore/Washington International Thurgood Marshall Airport ("BWI").

It is the specific "intent to evade" when committing a violation of an airport security requirement that renders the charged offense a felony rather than a misdemeanor. *Compare* 49 U.S.C. § 46314(b)(1) ("A person that violates subsection (a) is to be fined or imprisoned for not more than a year, or both) *with* 49 U.S.C. § 46314(b)(2) ("A person violating subsection (a) with

1

intent to evade security procedures or restrictions or with intent to commit a felony in the aircraft or airport area, shall be fined, imprisoned for not more than 10 years, or both."). Under 49 U.S.C. § 46301, a monetary civil penalty may be imposed for the same offense charged here criminally.

This case implicates both statutory and regulatory provisions for airport security. The charged offense references multiple subsections of Title 49 of the United States Code, which covers "transportation" statutory authority. *See* Indictment, ECF 1. Title 49, Subsection 44900 *et seq*. of the United States Code provides authority for the promulgation of airport security programs. Under Title 49, section 44901 provides statutory directives to the Administrator of the Transportation Security Administration ("TSA") to provide for the "screening of all passengers and property…that will be carried aboard a passenger aircraft…" Section 44903 addresses "airport transportation security" and requires, under subsection (b), that the TSA Administrator "prescribe regulations to protect passengers and property on an aircraft…against an act of criminal violence or aircraft piracy." Under subsection (c) of 44903, the Administrator must "prescribe regulations under subsection (b)…that require each [airport operator] to establish an air transportation security program that provides a law enforcement presence and capability at each of those airports that is adequate to ensure the safety of passengers." Finally, Section 44906 of Title 49 addresses "foreign carrier security programs," and requires the TSA Administrator to require "that a foreign air carrier must adopt and use a security program approved by the Administrator"; the adoption of the foreign carrier's security program must adhere to the "identical security measures that the Administrator requires air carriers serving the same airports to adhere to."

The additional authority that is relevant to trial on the alleged offenses is Title 49 of the Code of Federal Regulations, which contains the collection of regulations relating to

transportation, and specifically, Part 1540 *et seq*., which concern regulations for "civil aviation security."

---

[1] The Defense has requested additional portions of the Airport Security Program manual.
[2] The Defense redacted information sourced from security program manual in an abundance of caution since it may constitute sensitive security information.
[3] *See* BWI Airport Security Program, "Definition of Terms," at pg. 1,7.
[4] *Id*. at 8.



The trial case will involve reference to numerous federal agencies operating at BWI, including U.S. Customs and Border Protection ("CBP") and the Transportation Security Administration ("TSA"), both of which fall under the U.S. Department of Homeland Security. CBP is a law enforcement organization that protects U.S. borders from criminal activity such as terrorism and drug smuggling, and agricultural pests. The TSA protects our country's transportation systems. The agencies have distinct though complementary roles at the airport.

The airport has various security measures for law enforcement officers ("LEOs") flying armed, entailing a multi-step process of completing forms with the individual airline, providing additional information and credentials to TSA (which is recorded in a logbook), and then proceeding to the air carrier gate where the armed LEO provides completed airline forms to the flight crew.

---

[5] *Id.*
[6] *Id.*
[7] *Id.* (internal citations omitted).

During Mr. Jones' prior employment as an armed CBP Officer at BWI, he was issued a Secure Identification Display ("SIDA") badge. The SIDA badge authorized and enabled Mr. Jones to enter any area of BWI, including restricted areas. As a federal law enforcement officer, Mr. Jones was authorized to be armed when flying, even when flying for personal business. During his time employed as a CBP Officer at BWI, he traveled frequently between Baltimore, Atlanta, Georgia, and Charlotte, North Carolina for family responsibilities.

Before working as a CBP Officer for several years at BWI, Mr. Jones was employed as a police officer with the Baltimore Police Department and previously served in the United States Air Force. He has no prior criminal record. Following Mr. Jones's arrest on the federal charges on June 26, 2022, he provided a statement to law enforcement and was subsequently terminated from his CBP position.

Mr. Jones now resides in Atlanta, Georgia with his wife and young daughter who was born during this case's pendency. He works as a sports referee, making a salary drastically below that of his prior law enforcement career.

## II.   THE COURT SHOULD EXCLUDE THE GOVERNMENT'S 404(b) EVIDENCE.

The Government, via email on October 6, 2023, provided a list of various alleged bad acts by Mr. Jones, and explained that it intended to introduce 404(b) evidence more as rebuttal to a defense than during the Government's case in chief. However, the Government also noted that because the charges are specific intent crimes, the argument could be made that the 404(b) acts were intended to streamline the process and minimize the costs and time expended as an air passenger. The prosecution provided a list of acts that included:

1) "Other occasions" when the Government believes it knows that Mr. Jones accessed the airport's sterile area via a TSA "exit lane"[8] to board a flight as a private, paying passenger, regardless of whether he declared himself to be armed;

2) An occasion when Mr. Jones allegedly lied about his prior military status and an accident to American Airlines to avoid an airline change fee when he had to amend flight itinerary in February 2021. On that occasion, he allegedly provided false information, including the name of his military supervisor and phone number;

3) An alleged falsehood to Southwest Airline on February 21, 2022, to get priority boarding status;

4) On April 5, 2022, at a Frontier Airline ticket counter, Mr. Jones was in his work uniform, and allegedly cut the line to a get ticket for a private flight;

5) He allegedly lied to federal agents on April 5, 2022, when confronted immediately after allegedly violating a security requirement, about being on-duty and following someone – an act which the Government contends is *res gestae* of the offense;

6) Mr. Jones would allegedly depart BWI and not declare himself to be a LEO flying armed, but, on his return trips, he often would declare himself to be an armed LEO, thereby securing more streamlined processing at the other airports where his SIDA badge did not afford him the kind of access the Government believes he abused at BWI. (The Government provided a summary chart of sorts of various trips, but the chart is apparently not completely accurate, and the Defense does not have the underlying records.) The Government concedes that it cannot prove that Mr. Jones was not armed;

7) Upon arrest in June 2022 for the instant offense, Mr. Jones possessed an expired military ID card and a still-valid BPD identification card;

8) Mr. Jones allegedly provided falsified documentation about a service dog on a flight from Boston to BWI on the day of his arrest.

In addition to the above list noticed by email, the Government filed a 404(b) notice motion (ECF 36), which provides some additional contextual information for the above acts but also omits reference to an alleged falsehood to Southwest on February 21, 2022. As a basis for the acts' admission, the Government asserts in its motion that the acts were "intrinsic to the charged

---

[8] The Government does not provide a corresponding definition for its use of the descriptions "exit lane" or "exit portal" in its 404(b) motion. ECF 36 at 1, 3.

offenses, or, in the alternative, that they constituted evidence of Mr. Jones' motive, intent knowledge and absence of mistake or accident." ECF No. 36 at 1.

Without offering much in the way of justification, the Government has moved to admit a broad array of evidence that it claims is admissible pursuant to Fed. R. Evid. 404(b). As a threshold matter, the Government has failed to comply with the requirements for adequate discovery disclosures to support the admission of the proffered evidence. The Government has failed to articulate the specific 404(b) *permitted purpose* for which the Government intends to offer the evidence and the *reasoning* that supports that purpose. Even if the Government had provided sufficient discovery and the required articulation, the proffered evidence still should be excluded under Fed. R. Evid. 403 and additional evidentiary bars.

**A. Inadequate discovery disclosures require exclusion of the 404(b) evidence**

Underlying the Government's 404(b) notice apparently are records and information that the Defense does not possess and cannot meaningfully review to prepare for trial even if received at this juncture. The Defense does not have nor seen original or duplicate flight or security badge access records, nor LEO flying armed declaration records, though apparently these records are maintained.[9] *See* ECF 36 at pg. 1-2 (referencing records for flying armed, "badge access records," and flights). The Defense has in discovery only very limited discovery consisting mostly of minutes of video footage from several dates and short reports authored by an FBI agent about his investigation .

The Government previously provided the Defense with a "flights" chart that seemingly represents various flight numbers, flight routes between numerous airports, flight dates, and

---

[9] Discovery provided on October 2, 2023, does include two Southwest flying while armed declaration forms for the roundtrip flight between Baltimore and Boston on June 26, 2022, the day of Mr. Jones's arrest, but no further flying-while-armed records have been produced.

contained some color coding, notations, and asterisks – attached as <u>Exhibit A</u>, Flight Chart. The asterisks depict flights for which the prosecution believed Mr. Jones declared himself as an armed LEO.[10] On August 23, 2023, the Government notified counsel that there were inaccuracies in the chart's flight information that the Government was trying to clarify or correct and also that additional flight information might be added to the chart. No updated chart was received and even if one was, it would be matter not because the Defense has no underlying data for the chart.

Presumably, the Government would try to admit this flights' chart under Fed. R. Evid. 1006. As required under Rule 1006 to admit "summaries to prove content," the proponent may only use a summary or chart to "prove the content of voluminous writings, recordings, or photographs that cannot conveniently be examined by the court." The Government has not shown that the flights are so numerous that a summary chart is admissible.

Under Fed. R. Evid. 1006, the proponent "must make the originals or duplicates available for examination or copying, or both, by other parties at a *reasonable* time and place," and a court "may order the proponent to produce them in court." (emphasis added). The Defense has never received the underlying data or records for the chart. Therefore, the Government has not met its obligations as the proponent. The chart is also confusing and fails the requirements of Fed. R. Evid. 401 and 403.

At this stage, less than a month from trial, the Court should exclude reference to other alleged misuse of the SIDA badge and alleged failures to follow property security procedures beyond the date of offense evidence because without the underlying records, including the flight information,

---

[10] Further compounding evidentiary problems here is a basic relevance problem, or conditional relevance problem, since the Government *cannot prove*, as it concedes, whether Mr. Jones was in fact armed for flights. Additionally, this evidence implicates Rule 403.

security badge activity records, and LEO flying armed records, the Defense cannot adequately challenge the Government's proffers nor meet that evidence at trial.

**B. The Government has not fully articulated what evidence it is seeking to admit as intrinsic evidence.**

The scope of the evidence that the Government seeks to admit as "intrinsic" evidence to the charges is not entirely clear to the Defense between the Government's emailed list and the filed 404(b) motion. Intrinsic acts, and evidence thereof, are limited in scope. The Fourth Circuit has defined "intrinsic acts" as acts that are "part of a single criminal episode," "necessary preliminaries to the crime charged," "necessary to provide context relevant to the criminal charges," or "inextricably intertwined" with the charges. *United States v. Lightly*, 616 F.3d 321, 352 (4th Cir. 2010) (citing *United States v. Chin*, 83 F.3d 83, 87 (4th Cir. 1996), and *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007)). "Evidence is inextricably intertwined with the evidence regarding the charged offenses if it forms an *integral* and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Id.* at 352 (quoting *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (emphasis added)).

To some extent, the Defense concedes the Government's point that the "fact [sic] and circumstances concerning the flights on February 22, 2022[11] and April 5, 2022, including Jones's statements to Special Agents Rodski and Gorgon are intrinsic evidence." Gov't Mtn. at 3. But in its motion, the Government does not articulate the extent of the evidence that is intrinsic, nor does it explain why the evidence is intrinsic to the charges.

---

[11] Presumably, the date the Government cites is a typo. The Defense assumes the Government intended to write February 21, 2022, since that is the date contained in the indictment for Count One.

The Government's motion does not specify what evidence is intrinsic to the alleged offense on February 21, 2022. If it is the evidence noted in an email to the Defense regarding an alleged false provided to Southwest Airlines on February 21, 2022, the Defense must object to admission of this evidence on basic notice and discovery grounds. The Defense cannot discern any discovery report referencing any alleged falsehood to Southwest Airlines on that date.

The Defense concedes, however, that Mr. Jones' statements to federal agents on April 5, 2022 are admissible as an opposing party's statement under F.R.E. 801(d)(2)(A).

## C. The Government has not met its burden for introducing 404(b) evidence.

The Court should exclude the array of evidence the Government noticed by email and by formal 404(b) motion because the Government has failed to meet basic requirements for introducing such evidence. Rule 404(b) of the Federal Rules of Evidence forbids the admission of "evidence of any other crime, wrong, or act … to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). "Other acts" evidence may be admissible to prove such things as "motive, opportunity, intent, plan, knowledge, identity, absence of mistake, or lack of accident," but only if the Government meets specific requirements. *Id.* Under 404(b)(3), the prosecution must:

(A) provide *reasonable* notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;

(B) articulate in the notice the *permitted purpose* for which the prosecutor intends to offer the evidence and *the reasoning* that supports the purpose; and

(C) do so in writing before trial – or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

(emphasis added). In bearing the burden of establishing that evidence of a defendant's prior bad act is admissible for a proper purpose, "the government must identify each proper purpose for which it will use the other acts evidence and explain how that evidence fits into a chain of

inferences—a chain that connects the evidence to each proper purpose, no link of which is a forbidden propensity inference." *United States v. Hall*, 858 F.3d 254, 266 (4th Cir. 2017). Moreover, a "proper purpose" should not be relied upon if that purpose is extraneous to the issues at hand. In other words, unless a 404(b) purpose (e.g., motive, opportunity, intent, etc.) is actually at issue, "other acts" evidence is inadmissible. The Government has failed to meet its burden to admit proffered 404(b) notice, and even if it has, the evidence is excludable on other grounds.

### 1. The other acts of alleged SIDA misuse fail 404(b) and 403 requirements.

The Government asserts that "even if the evidence concerning the armed robbery is not intrinsic…it is still nevertheless admissible pursuant to Fed. R. Evid. 404(b)." Gov't Mtn. at 4. Presumably the reference to an "armed robbery" is an artifact from another case as there is no allegation that Mr. Jones ever committed an armed robbery. The Government goes on to state that the "other conduct" identified in its 404(b) motion "reflects Jones's motive use his actual or purported position of authority to streamline his own flying experience and reduce the inconvenience and costs associated with flying. Those same motives similarly explain his breach of security protocols, as charged." *Id.* The Government offers zero analysis under the 404(b) admissibility test, however.

Essentially, the Government is asserting that Mr. Jones's motive for the alleged misuse of his authority was to save time and money. First, the Government is completely speculating on motive. Second, this type of evidence – showing that a defendant's motive for committing a crime was a desire to save time and money – has little tendency, standing alone, to prove that someone committed a crime.  There is a key distinction between an interest in saving time and money, which is in almost everyone's interest, and an inclination to engage in illegal conduct to meet that interest.

A mere interest in saving time and money, without other evidence that the person was likely to commit the crime adds little to the probability that Mr. Jones committed a crime.

Even if the Government's other alleged SIDA badge misuses are admissible under 404(b), the evidence fails under Fed. R. Evid. 403. Rule 403 applies equally to intrinsic and extrinsic evidence. *See United States v. Basham*, 561 F.3d 302, 329 (4th Cir. 2009) ("Even intrinsic evidence, however, must [] satisfy Rule 403's balancing test[.]") (citation omitted). It also applies to evidence that may be admissible under Rule 404(b). *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010) ("The last requirement in our Rule 404(b) analysis involves a Rule 403 determination, that is, the probative value of the evidence must not be substantially outweighed by its prejudicial effect.") (citation omitted). Accordingly, pursuant to Rule 403, the Court may exclude intrinsic evidence, and evidence that may be admissible under 404(b), if the evidence's "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasted time, or needlessly presenting cumulative evidence."

It is not fully clear to the Defense what other alleged acts of SIDA badge-misuse the Government is seeking to introduce. Evidence beyond the alleged misuse of the SIDA badge of the dates in the indictment (February 21, 2022 and April 5, 2022), however, will unnecessarily prolong the trial, and mislead and confuse the jury.

## 2. The military information allegedly provided to American Airlines should be excluded.

The Defense lacks any underlying record pertaining to Mr. Jones allegedly providing false information to American Airlines about his military status in connection to a scheduled flight "[b]etween on or about February 14, 2022, and on or about February 27, 2022," to "justify a flight change and/or late arrival without incurring a flight change fee." Gov't Mtn. at 2. The Government

submits that Mr. Jones falsely represented to American Airlines that the military unit to which he was assigned had been in an accident, identified a Major Rotman as his military superior, whom, the Government asserts was the name of a CBP supervisor, and provided a fictitious phone number. *Id*. The Government then jumps to mentioning that at the time of Mr. Jones' arrest, he had an expired US Air Force military ID card and unexpired BPD ID card.

This evidence should be excluded. First, the alleged falsehood for boarding a private flight involved no misuse of a security badge or other security violation. Second, the Government cannot provide a specific date for the flight or alleged falsehood in question. Gov't Mtn. at 2. Third, the Defense does not have any underlying record regarding this flight or the alleged false military information, which, assumedly, was entered or recorded somewhere – presupposing the statements were made in the first palace. Fourth, the proffered false statements are hearsay as they were apparently said to some staff member connected to American Airlines, who apparently recorded the information *somewhere*. It is not clear by what means the Government would attempt to introduce the alleged falsehoods, but there are multiple levels of hearsay involved. Hearsay within hearsay is only admissible if each part of the combined statements conforms with a hearsay exception. Fed. R. Evid. 805. The Government has failed to articulate the levels of hearsay exceptions to render these statements admissible. Fifth, the Government's proffered false information justification – that the false information was offered to avoid a fee – is speculative, and risks misleading the jury, although the Government may argue that the justification matters not.

Evidence relating to Mr. Jones possessing ID cards for the US Air Force and BPD *upon arrest*, should be excluded under Rules 401 and 403. There is no evidence that Mr. Jones misused those ID cards in relation to the charged offenses. The fact that Mr. Jones possessed these cards at

some point is wholly irrelevant to the charged offenses. This evidence does not pass Rule 401 and 403 gatekeeping.

### 3. The Court should exclude the French bulldog puppy evidence.

In an airport security violation case, the Government seeks to admit evidence relating to a French bulldog puppy named Lilac. Gov't Mtn. at pg 2. As a preliminary matter, the Defense is concerned that the Government may be misunderstanding the events here. Based on the Defense's understanding, Mr. Jones was arrested on June 26, 2022 at BWI *before* taking a flight to or returning from Boston to pick up a bulldog puppy for his daughter, and therefore never procured or flew with the bulldog that day. Further, it is the Defense's understanding that although Mr. Jones may have possessed the service dog form, he never in fact submitted or attempted to submit the form to any person or entity. Even if he submitted the form and procured the puppy, all related evidence should be excluded on numerous evidentiary grounds.

On October 2, 2023, the Government disclosed a Department of Transportation "Service Animal Air Transportation Form" document containing various information items for a French bulldog serving as a trained service animal. *See* Exhibit C, Dog Form. The Government describes the contents of this form in page 2 of its 404(b) motion. In the form provided to the Defense, the entered information is typewritten and not signed. It is unclear who completed the form or from where law enforcement obtained the form (e.g., Mr. Jones's person or other property) but, regardless, no signature of Mr. Jones appears on the form. Admitting the form, its content, or any information relating to its content runs afoul of foundational evidentiary relevance and hearsay standards.

Any evidence relating to the French bulldog fails to meet the requirements of 404(b). This alleged act on June 26, 2022 falls *after* the last charged offense date of April 5, 2022 and has

14

minimal, if any probative value on any pertinent trial issue. And, as with the other proffered 404(b) evidence, the Government fails to articulate the permitted purpose for which the prosecution intends to offer the evidence and the reasoning supporting the purpose.

On 403 grounds, the bulldog evidence not only carries a risk of confusing the jury but also undue prejudice. While the use of "therapy dogs" is bourgeoning and dogs are increasingly seen in airports, those on the jury who have personal experience with the bona fide need and use for service dogs may find themselves offended by Mr. Jones' behavior on this front and prejudiced against him. Any minimal probative value of introducing the false information about the puppy boarding is substantially outweighed by the risk of prejudice.

> **4. Evidence of Mr. Jones purchasing a flight ticket while in uniform and allegedly line-cutting on April 5, 2022 is irrelevant.**

While the Defense concedes that evidence relating to Mr. Jones accessing a secured area of BWI via the exit portal by using his SIDA badge on April 5, 2022 (the charged date for Count 2) may be admissible as intrinsic evidence, evidence that he purchased a flight ticket while in uniform and allegedly cut the line on April 5, 2022, is not and should be excluded.

It is unclear how the Government will establish that Mr. Jones was in line to purchase a flight ticket, but perhaps will rely on a ticket counter agent. A discovery report indicates that a ticket counter agent advised the FBI investigation agents that Mr. Jones provided his credentials and "properly completed the LEO flying armed forms required by Frontier and federal regulations. *See* Discovery, Jones0008, FD-302 dated 4/15/2022; *see also* Gov't Mtn. at 2. The Government offers no explanation for the relevance of this evidence.

Because the Government's various proffered evidence items contained in the 404(b) motion violate basic discovery and evidentiary standards, they should be excluded.

III.    ADDITIONAL EVIDENCE TO BE EXCLUDED

Beyond the evidence noted in the Government 404(b) notice, the Defense seeks exclusion of additional categories of evidence, including, spousal statements to law enforcement, an employment disciplinary matter relating to a gate closure, select portions of Mr. Jones's statements to law enforcement, and witness testimony relating to authorities and regulations.

**A. Spousal statements to law enforcement should be excluded from trial on hearsay and spousal testimonial privilege grounds.**

Discovery references statements made by Mr. Jones's wife Ms. Jasmine Jones to law enforcement following his arrest. Mrs. Jones allegedly made statements pertaining to the location of Mr. Jones' personal weapons, which he legally possessed. The Defense moves to exclude any evidence relating to the wife's statements to law enforcement based on hearsay and testimonial privilege grounds, and alternatively the evidence should be excluded under Rule 401 and 403.

Mrs. Jones's statements to law enforcement are excludable as hearsay under Fed. R. Evid 802 if offered through another witness. Further, under the spousal testimonial privilege (Fed. R. Evid. 501), she cannot be compelled to testify against her husband. Federal courts recognize two marital privileges: the spousal communication privilege and the spousal testimony privilege. While distinct, both privileges are firmly rooted in common law and intended to protect the spousal relationship. *United States v. James*, 128 F. Supp. 2d 291, 293-94 (D. Md. 2001) (stating that the spousal testimony privilege "was intended to promote family harmony by making the witness-spouse incompetent to testify against his or her spouse" (citing *Trammel v. United States*, 445 U.S. 40, 53 (1980)); *United States v. Hamilton*, 701 F.3d 404, 407 (4th Cir. 2012) (explaining that marital communications are privileged "because 'marital confidences' are 'regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails"). The spousal testimony privilege allows a

16

testifying spouse to choose whether or not to testify against the defendant spouse.  *James*, 128 F.

Supp. 2d at 293-94.  Jasmine Jones chooses not to testify against her husband.

### B.  The Court should exclude any evidence relating to Mr. Jones failing to properly close an airport gate and all disciplinary action relating to the violation.

On October 6, 2023, the Government provided several pages of records[12] relating to a notice

of an airport security violation for Mr. Jones apparently failing to ensure the closing and locking

of an exit gate on June 22, 2022, which resulted in five days of SIDA badge suspension. The

Government notified counsel that it does not intend to introduce the incident in its case in chief.

The Defense requests a pre-trial ruling excluding all evidence relating to the gate closure incident.

The alleged incident evidence is not relevant, runs afoul of Rule 403, and would not constitute

Rule 404(b) evidence as it was simply at most an innocent oversight.

### C.  The Court should limit portions of Mr. Jones's post-arrest statement to law enforcement.

Mr. Jones provided statements to law enforcement following his arrest. The statements are not

recorded but the Government has provided notice of the substance of the statements through an

FBI Report attached as <u>Exhibit C</u>, Statement Report. The Defense moves to exclude the following

portions of Mr. Jones's statement to law enforcement under Rule 404(b) and 403:

1. Any reference to personal firearms that Mr. Jones owns and flights beyond the charged

   offense dates.

2. Any reference to suspicions of him being associated with drug trafficking or

   information on drug or weapon trafficking operations,[13] as these references carry a

---

[12] Some of these records appear to be from Allied Universal, a security services contract company that is apparently used by BWI. The Government has not included a business record certification with the production of the records.

[13] To the extent the Government intends to introduce any other evidence of suspicion of Mr. Jones being involved with drug trafficking, the Defense objects and move to exclude such evidence under

danger of unfair prejudice, confusion of the trial issues, and misleading the jury under Rule 403.

3. Any reference to an alleged security infraction relating to Mr. Jones passing a vehicle through a security gate and not waiting for the gate to close and the associated suspension of his security badge, as the Government has already noticed that it will not seek to introduce the security gate closure matter in its case-in-chief.

4. A former BPD co-worker contacting Mr. Jones and telling Mr. Jones that he had heard from a woman that Mr. Jones had done "something bad at the airport," and any reference to Mr. Jones being tipped off about FBI investigation.

5. Any reference to the bulldog purchase for his daughter, since the Defense has moved to exclude any reference to the bulldog matter.

Since Mr. Jones's statement was not recorded, there is no recording to play in the courtroom for the jury to hear the complete line of questioning and responses. Presumably, Mr. Jones's statements will be introduced through an FBI agent. Since there is no recording to redact, the witnesses who would introduce Mr. Jones's statement at trial must be instructed in advance to not mention the above statements should the Court exclude them. The Defense reserves the right to withdraw or supplement the above requests.

**D.  The Court should prohibit witnesses from testifying about the law and exclude expert testimony at this stage.**

On October 6, 2023, the Government notified the Defense that it planned on calling three witnesses to testify about regulations and authorities. Based on the information provided, the Government intends to call:

---

F.R.E. 401, 403, 404. No notice has been provided of any intent but the Government to introduce such evidence, but the Defense raises this objection in an abundance of caution.

1. Richard Thorne of the Maryland Transportation Administration

2. Jill Thrash, TSA Assistant Federal Security Direction – Inspections

3. Brandon Hendricks – CBP Special Agent

This is the *full* extent of the information provided to the Defense regarding these witnesses and the subject of their testimony. Their testimony should be excluded at trial for at least two reasons: First, if these witnesses are allowed to testify, they would be testifying as experts on regulations and authorities, and the Defense lacks the necessary notice and materials under Rule 16 for expert testimony to be admitted at this stage. Second, the Court, not Government witnesses, should determine and instruct the jury on what the applicable law is at trial.

Based on the minimal information provided, these witnesses would be testifying not as lay fact witnesses but as experts, or potentially mixed fact-law witnesses. Based on the lack of expert notice provided at this point, their testimony should be excluded. The Government should not be permitted to back-door expert testimony at this stage.

Under F.R.E. 702 – testimony by expert witnesses, " a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Here, based on the Government's minimal notice provided to the Defense, these witnesses would be, at least in part, testifying about regulations and authorities relevant to airport security, which is expert testimony. Yet, the Government has not complied with disclosure requirements for Government expert witnesses under Fed. R. Crim. Pro. 16(a)(1)(G). These witnesses should therefore be excluded at this late stage.

While it is the Defense's position that the Rule 16 disclosure violations are sufficient to exclude these witnesses' testimonies entirely, the Defense provides additional analysis to aid the Court in determining whether and to what extent these witnesses' testimony should be excluded.

Although Fed. R. Evid. 702 permits an expert to give opinions on matters involving specialized knowledge so long as the testimony will assist the trier of fact to understand the evidence or determine a fact in issue, under this standard, "testimony that states a legal standard of review or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver,* 470 F.3d 550, 562 (4th Cir. 2006). Judge Hollander provided recent helpful guidance in this area in *United States v. McComber,* 2022 WL 16859733, at *17 (D. Md. Nov. 10, 2022):

> [I]n cases where the 'legal regime is complex' and the regulatory landscape is 'intricate,' the testimony of a qualified expert could be helpful in providing background information to the jury with regard to the statutory and regulatory schemes . . . . But the questions must be carefully posed. And, the testimony cannot trample on the responsibility of the court to ascertain the law and to advise the jury accordingly. Nor may such testimony undermine the jury's responsibility to decide the facts.

Here, there are foundational questions that have not been addressed before the Court can even proceed to assessing whether any witness, let alone an expert witness, should be allowed to testify about regulations and authorities. First, the Court needs to determine whether the parties have identified, incorporated, and defined the applicable law correctly in the jury instructions. And if there is a dispute as to the law applicable and defined for trial, it is for the Court to resolve. In *Adalman v. Baker, Watts & Co.,* 807 F.2d 359, 366 (4th Cir. 1986), *abrogated on other grounds by Pinter v. Dahl,* 486 U.S. 622 (1988), the Fourth Circuit cautioned, that "under our system it is the responsibility—and the duty—of the court to state to the jury the meaning and applicability of the appropriate law, leaving to the jury the task of determining the facts which may or may not

bring the challenged conduct within the scope of the court's instruction as to law." With that said, the Court appeared to adopt a very strict rule that expert witnesses may not testify about the proper interpretation of applicable domestic law. *Id.* The Court reasoned that "permitting such testimony as to legal conclusions gives cogent meaning to the apprehensions that jurors will turn to the expert, rather than the judge, for guidance on the applicable law." *Id.* (citation omitted).

Since then, in *United States v. Offill,* 666 F.3d 168, 175 (4th Cir. 2011), the Fourth Circuit held that "when the legal regime is complex and the judge determines that the witness' testimony would be helpful in explaining it to the jury, the testimony may be admitted." The Court clarified that "commentators have consistently concluded that expert testimony that ordinarily might be excluded on the ground that it gives legal conclusions may nonetheless be admitted in cases that involve highly technical legal issues." *Id.* (citations omitted). Applying this standard, in *Offill*, the Fourth Circuit held that the "specialized nature of the legal regimes involved in this case and the complex concepts involving securities registration, registration exemptions, and specific regulatory practices make it a typical case for allowing expert testimony that arguably states a legal conclusion in order to assist the jury." *Id.* The Court further clarified that "we find it difficult to imagine how the government could have presented its case against Offill without the assistance of expert testimony to explain the intricate regulatory landscape and how securities practitioners function within it." *Id.*

Nonetheless, even when the regulations are complex, courts must still proceed with caution in admitting expert testimony. Courts must make sure that the testimony does not invade the province of the jury. Therefore, as Judge Hollander warned (citing to a District of Mass. case), expert testimony "must accurately state the law . . . . [a]nd to the extent of a dispute as to the law, only the court can resolve it . . . . [p]ut simply, any expert description of the law is

admissible only if it is correct." *McComber,* 2022 WL 16859733, at *15 (citing *Adams v. New England Scaffolding, Inc.*, 2015 WL 9412518, *5 (D. Mass. Dec. 22, 2015)).   In fact,  in *McComber,* Judge Hollander adopted the following summary of the law on this issue:

> 1.  There is no general prohibition against an expert describing the law (including specific regulations or a regulatory framework).
>
> 2.  An expert can describe the law only if that description is accurate.  **If there is a dispute as to the law, it is for the court to resolve.**
>
> 3.  There is a general prohibition against an expert describing the application of the facts to law, or stating a conclusion based on that application.  **However, any such testimony must not be, in form or substance, an opinion as to a disputed issue of law.**
>
> 4. All expert testimony concerning the law must be helpful to the jury in accordance with Fed. R. Evid. 402.  Testimony by an expert concerning an ultimate legal conclusion is not likely to be helpful, and therefore, should rarely be admitted.
>
> 5. All expert testimony concerning the law is subject to the limitations of Fed. R. Evid. 403.

*McComber,* 2022 WL 16859733, at *16 (citing *Adams*, 2015 WL 9412518, at *8) (emphasis added). If the Court finds that expert testimony (or *any* testimony) on regulations and authority is admissible, the Defense requests a limiting instruction, "advising the jury that their decisions must be based on the law as set forth by the Court, not by a witness." *Id.* at *17.

While Judge Hollander cited in *McComber* to cases in which expert testimony was admitted to explain complex statutory or regulatory schemes, *id*. at 16-17, there are numerous instructive cases in which courts have excluded testimony on regulations.[14]

---

[14] *See, e.g., Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986) (excluding testimony of expert on meaning and applicability of securities laws because they were domestic laws; "[u]nder circumstances involving domestic law, this court can conceive of no circumstances which would shift this burden from the court to the jury, where the jury judgment would be influenced, if not made, on the basis of expert witness testimony which would undoubtedly follow the usual pattern of conflicting expert opinions.");

While the Defense provides summary guidance on the admission of expert testimony regarding regulations and authorities, at this point there is a major immediate elementary and preliminary basis for excluding testimony in this area because the Defense lacks basic sufficient notice of the contents of these witnesses' testimonies a few weeks before trial.[15] The proper remedy is to exclude the testimony. In the alternative, the Court should compel the Government to meet Rule 16 expert witness discovery obligations by October 20, 2023.

---

*F.A.A. v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983) (affirming district court's decision to exclude expert testimony about the meaning and applicability of federal aviation regulations because such testimony would "invade the province of the court to determine the applicable law and to instruct the jury as to that law");

*United States Aviation Underwriters, Inc. v. Pilatus Business Aircraft, Ltd.,* 582 F.3d 1131 (10th Cir. 2009) (excluding expert testimony on flight regulations because explaining content of the regulation was merely repeating the jury instruction; nothing about the regulation suggested that explanation by an expert was required and violates the rule against experts testifying as to the law governing the jury's deliberations);

*United States v. Zipkin,* 729 F.2d 384, 387 (6th Cir. 1984) (reversing trial court's decision to allow a bankruptcy judge to testify regarding his interpretation of the Bankruptcy Act and his own orders; "[i]t is the function of the trial judge to determine the law of the case," the court stated; "[i]t is impossible to delegate that function to a jury through the submission of testimony on controlling legal principles.");

*Owen v. Kerr-McGee,* 698 F.2d 236, 240 (5th Cir. 1983) (witness's offering a legal conclusion on contributory negligence of a party infringed upon the jury's role in deciding the case);

*Marx v. Diners' Club, Inc.,* 550 F.2d 505, 509-10 (2d Cir. 1977) (it was error for trial court to allow a lawyer qualified as a securities regulation expert to render his opinions on the legal obligations arising from a contract and on the legal significance of various facts in evidence; "legal opinions as to the meaning of the contract terms at issue . . . was testimony concerning matters outside [the witness's] area of expertise . . . It is not for witnesses to instruct the jury as to the applicable principles of law, but the for the judge.").

[15] Without more, the Defense cannot even discern whether it would need to retain its own expert to challenge the Government's witness testimony on regulations and authorities.

## **CONCLUSION**

For these reasons, the Court should deny the admission of the Government's 404(b)

evidence and grant the additional relief requested herein.


Respectfully submitted,
JAMES WYDA
Federal Public Defender


_____/s/_____
Sedira S. Banan (#804827)
Assistant Federal Public Defender
Office of the Federal Public Defender
Tower II - 9TH Floor
100 South Charles Street
Baltimore, Maryland 21201
(410)  962-3962 (t)
(410)  962-3976 (f)
Sedira_Banan@fd.org